# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| TRANSOCEAN GROUP HOLDINGS PTY LTD, directly on its own behalf and derivatively on behalf of High Plains Biofuels, Inc., and TRANSOCEAN GLOBAL BIOFUELS PTY LTD, directly on its own behalf and derivatively on behalf of High Plains Biofuels, Inc., | Civil No. 07-652 (JRT/FLN) |

Plaintiffs,

**MEMORANDUM OPINION AND ORDER**

v.

SOUTH DAKOTA SOYBEAN
PROCESSORS, LLC, a limited liability
company; RODNEY CHRISTIANSON, an
individual; DANIEL FEIGE, an individual;
RODNEY SKALBECK, an individual; and
THOMAS J. KERSTING, an individual,

Defendants.

---

Eric A. Bartsch, Marc A. Al, Troy J. Hutchinson, and Steven R. Kluz, **STOEL RIVES LLP**, 33 South Sixth Street, Suite 4200, Minneapolis, MN 55402, for plaintiffs.

Alan I. Silver and Christopher R. Morris, **BASSFORD REMELE, PA**, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402-3707, for defendants.

This dispute is about failed plans for the parties to construct and operate a soybean biodiesel plant in Volga, South Dakota. Plaintiffs Transocean Group Holdings Pty Ltd. and Transocean Global Biofuels Pty Ltd. (collectively, "Transocean"), an Australian banking firm, discussed building the plant in cooperation with defendant South Dakota

Soybean Processors ("SDSP").  In April 2006, the parties signed a document expressing that intent, and they cooperated to incorporate High Plains Biofuels, Inc. ("High Plains"), a company that was intended to own and operate the plant.  SDSP, however, ultimately pulled out of the project.

Transocean subsequently filed this action alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, breaches of fiduciary duty by both SDSP and several SDSP-affiliated members of the High Plains board of directors, unjust enrichment, constructive fraud against both SDSP and the board members, and civil conspiracy against both SDSP and the board members. The individual board members – defendants Rodney Christianson, Daniel Feige, Rodney Skalbeck, and Thomas Kersting – and SDSP now move for summary judgment on all of Transocean's claims, and Transocean moves for summary judgment on several more limited issues.  In addition, Transocean moves for the exclusion of two experts and the exclusion of evidence concerning the prospective value of the plant after the alleged breach.  For the reasons given below, SDSP's motion for summary judgment is granted in part and denied in part; the individual defendants' motion for summary judgment is granted in part and denied in part; Transocean's motion for partial summary judgment is granted in part and denied in part; and Transocean's motions in limine are deferred until this case is set for trial.

# BACKGROUND

Transocean is an Australian-based corporation that provides banking and corporate-finance services to emerging companies, and has experience financing biodiesel projects. SDSP owns and operates a soybean-processing plant, a soybean-oil refinery, and a bio-based polyurethane production facility in Volga, South Dakota. In late 2005, representatives of these companies began meeting to discuss working together on a biodiesel-refinery project on land adjacent to SDSP's Volga facilities. The parties ultimately incorporated High Plains to own and operate this new project, with Transocean and SDSP each owning 50% of High Plains.

On April 28, 2006, the parties signed a document titled "Heads of Agreement" ("HOA"), setting forth various aspects of their aspirations to construct the planned biodiesel plant. (Morris Aff., Docket No. 187, Ex. 65.) The principal dispute in this case is whether this document constituted an enforceable contract.

The document begins by stating:

> This Heads of Agreement (HOA) sets out the principal terms upon which the parties being (Parties) Transocean Group Holdings Pty Ltd or its nominee (Transocean) and South Dakota Soy Processors, LLC (SDSP) have incorporated High Plains Biofuels (High Plains) with a view to jointly undertake the development and construction of a biodiesel plant (Plant) on the land owned and occupied by SDSP in South Dakota (Land).

(*Id.*) The four-page document goes on to state each party's "proposed" obligations. First, the document:

> proposed that SDSP's obligations in relation to the High Plains will be to: (a) provide the site upon which the Plant will be developed and constructed (being the Land as referred above); (b) put forward a proposal for project management services in relation to the Plant on commercially acceptable

terms to the High Plains and any financiers; (c) provide the ongoing daily administration/management of the Plant; (d) prepare operating budgets for the Plan development, construction and operation; (e) provide the soy processing and crushing facility for processing of all soy feed stock required in relation to Plan operations; and (f) source one or more strategic partners to provide feed stock to the Plant.

(*Id.*)  The HOA adds that "[i]n return for the above, SDSP will be entitled to normal arm's length commercial fees – taking into account the fact that SDSP will be a major shareholder in High Plains."  (*Id.*)  The agreement then lists a series of Transocean's obligations, which similarly outline general commitments, without including precise dates, details, or dollar amounts.[1]  (*Id.*)  However, the HOA also includes a provision stating "[a]s soon as practicable after the date of this HOA, the parties agree to negotiate in good faith the terms and conditions of a formal Stockholders Agreement to more fully document the intentions of the parties as set out in this HOA."  (*Id.*)  The HOA also included a choice-of-law clause indicating that disputes over the HOA would be governed by Delaware law.

The parties subsequently assembled a board of directors for High Plains, with both SDSP and Transocean designating a share of the board's membership.  Board members designated by SDSP included its Chief Executive Officer, Rodney Christianson; its commercial manager, Tom Kersting; and shareholders and former board members Rodney Skalbeck and Dan Feige.  In the months that followed, however, the parties were unable to reach final agreements on several critical components of the project.  Those components included (1) the price that would be paid to SDSP for providing soybean oil;

---

[1] For example, those obligations include "raise any necessary seed capital funding."  (*Id.*)

(2) the payments to SDSP for the lease of its property; (3) the payments to SDSP for managing the construction of the new plant; and (4) a formal shareholder's agreement. The parties also had disagreements over several practical issues, including the type of technology the plant would employ and the plant's production capacity.

SDSP also indicates that by August 2006, it became concerned that in order to generate sufficient revenue from a High Plains stock offering, High Plains would have to dilute SDSP and Transocean's ownership interests to unacceptably low levels. The time period also saw changes in prices of soybean oil and biodiesel, both of which would have a significant impact on the project's profitability.

On December 19, 2006, SDSP's board of managers voted to cease negotiations with Transocean. SDSP communicated this decision to Transocean in a letter dated January 11, 2007, which included the following explanation:

> Market conditions surrounding the biodiesel industry have called into question the strategy upon which the proposed project was based and the ultimate viability of a project based on this strategy. Several key factors affecting biodiesel have trended lower recently, reducing the attractiveness of the project to potential outside investors. Based on the proposed strategy, the value of the project envisioned by the founding shareholders has been greatly diminished. These changes in market conditions have served to highlight the philosophical differences between the companies and have impaired the companies' ability to resolve their differences in a mutually acceptable manner within the framework of the [HOA].

(Morris Aff., Docket No. 187, Ex. 31.)

Transocean contends that despite the explanation included in SDSP's termination letter, the true reason for its change of course was its interest in pursuing the project alone. Transocean suggests that in the months before the letter, SDSP was actively

beginning to explore that possibility, and that it kept these plans hidden. As evidence of these alleged plans, Transocean points to minutes from an August 3, 2006, SDSP meeting where Christianson presented a plan for how SDSP could proceed with the project independently. (Al Decl., Docket No. 227, Ex. 34.) Transocean also points to minutes from a subsequent meeting in September 2006, where SDSP discussed the possibility of an equity drive to finance a biodiesel plant without Transocean. (*Id.*, Ex. 32.) Finally, Transocean points to evidence that SDSP discussed financing for a solo project with at least one bank. (*Id.*, Ex. 13, at 94-100.) Transocean alleges that SDSP continued to discuss going forward with this project in the months after it ended its relationship with Transocean. Transocean contends that in the absence of any notice of these separate plans, it expended approximately $150,000 on the project, in reliance on its understanding that it and SDSP would be proceeding together. This action followed.

## ANALYSIS

## I.    STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all

reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.     BREACH OF CONTRACT (Count 1, against SDSP)

### A.     Governing Law

Transocean first alleges that SDSP breached the HOA. The parties dispute which state's law should govern this claim. In diversity cases, such as this one, the Court applies the choice of law principles of the state in which the district court is located. *Highwood Props., Inc. v. Executive Risk Indem., Inc.*, 407 F.3d 917, 920 (8th Cir. 2005). Accordingly, this Court applies the choice of law principles of Minnesota.

"Minnesota courts generally enforce choice of law provisions, unless there is evidence that the parties did not negotiate such a provision in good faith and did so with an intent to evade the law." *Guidant Sales Corp. v. Niebur*, No. 01-1772, 2001 WL 1636502, at *5 (D. Minn. Oct. 18, 2001). Here, the HOA includes a provision stating that "[t]his HOA and the formal Stockholders Agreement will be governed by the laws of the jurisdiction in which High Plains is incorporated." (Morris Aff., Docket No. 187, Ex. 65.) High Plains was incorporated in Delaware. While there are substantial questions about whether the substantive provisions of the HOA are specific enough to be enforceable, as set forth below, this choice-of-law provision is unambiguous. In short, there is no question that the parties agreed that any legal questions arising out of the HOA would be resolved using Delaware law, and the Court must enforce that agreement. *See Lanier Worldwide, Inc. v. TOPAC Acquisition Corp.*, No. A05-1088, 2006 WL 852084,

at *1-2 (Minn. Ct. App. 2006) (enforcing a choice of law clause despite a dispute over whether the agreement including the clause contained binding commitments); *see also Rio Props., Inc. v. Stewart Annoyances, Ltd.*, 420 F. Supp. 2d 1127, 1131-32 (D. Nev. 2006) (same); Restatement (Second) of Conflict of Laws § 201 (explaining that even where a contract was entered into by misrepresentation, undue influence or mistake, the choice-of-law provision is not necessarily set aside unless there is a defect specifically applicable to that provision). Thus, this Court applies Delaware law to Transocean's breach of contract claim.

### B.     Is the HOA an Enforceable Contract to Build a Biodiesel Plant?

The parties next dispute whether the HOA is specific enough to constitute an enforceable contract to construct the biodiesel plant. Under Delaware law, contract provisions are unenforceable where they merely amount to "an agreement to agree in the future without any reasonably objective controlling standards provided." *Hammond & Taylor, Inc. v. Duffy Tingue Co.*, 161 A.2d 238, 239 (Del. Ch. 1960). In other words, "the parties must have reached agreement on all material terms before an agreement to agree will be enforced." *Ramone v. Lang*, No. 1592-N, 2006 WL 905347, at *13 n.56 (Del. Ch. Apr. 3, 2006).

Here, the Court agrees with SDSP that the HOA does not satisfy these standards, and is not an enforceable agreement under Delaware law. As an initial matter, the HOA – which includes just three pages of contract terms – clearly is premised on the parties resolving scores of additional details before either party would have definable, binding

obligations.  Perhaps the clearest evidence of this is the HOA's indication that as compensation for performing its "obligations," each party "will be entitled to normal arm's length commercial fees."  (Morris Aff., Docket No. 187, Ex. 65.)  In other words, despite purportedly committing the parties to several broad, detail-laden tasks, such as "provid[ing] the soy processing and crushing facility for processing of all soy feed stock required in relation to Plant operations," and "act[ing] as lead manager and coordinator for all debt and equity funding required by High Plains to compete the development and construction of the Plant," the HOA did not specifically indicate what anyone would be paid.  (*Id.*)  The HOA is also silent on a number of other critical specifications, such as (1) the size of the proposed plant; (2) the specific choice of available biodiesel technologies that would be used; (3) when the plant would be built; (4) the specific source for the plant's financing; (5) how any profits or losses from the plant would be allocated; and (6) what circumstances, if any, would justify either party walking away from the project.

In sum, it simply strains credulity to believe that the parties thought that the vague commitments included in the HOA were fully enforceable, and that a Court or jury could one day be asked to determine, for example, whether SDSP had performed its "obligation" to "provide the site upon which the Plant will be developed" for a "normal" commercial fee.  It is far from clear that either this Court or a jury would have had legally sufficient guidance to adjudicate such disputes, *see Indep. Cellular Tele., Inc. v. Barker*, No. 15171, 1997 WL 153816, at *4 (Del. Ch. Mar. 21, 1997) ("The material terms of a contract will be deemed fatally vague or indefinite if they fail to provide a reasonable

standard for determining whether a breach has occurred and the appropriate remedy."); *see also Heritage Homes of De La Warr, Inc. v. Alexander*, No. 1339-K, 2005 WL 2173992, at *3 n.18 (Del. Ch. Sept. 1, 2005) ("This Court knows of no reasonably reliable method of calculating damages based on a hypothetical house to be built in accordance with non-existent construction plans and no agreed upon price."), and, in any event, sophisticated commercial actors, such as those involved here, plainly would have expected to eventually protect their interests with more specific language. (*See* Al Decl., Docket No. 227, Ex. 21 (noting that before this project, Transocean had "helped develop capital markets and supply chain strategies for 3 biodiesel companies").)

This understanding of the HOA is reinforced by several word choices that are also inconsistent with the view that it was an enforceable contract. First, the first paragraph of the HOA states that the agreement was constructed "**with a view** *to* jointly undertake the development and construction of a biodiesel plant." (Morris Aff., Docket No. 187, Ex. 65 (emphasis added).) This would be odd language for an agreement intended to formally bind the parties to the plant's construction. Similarly, the recitation of each party's "obligations" states "[i]t is **proposed** that [the party's] obligations . . . **will be** to" perform particular tasks. (*Id*. (emphasis added).) In other words, the obligations are stated as if they will arise at some undetermined point in the future, rather than as if they are in effect now. *See Richie Co., LLP v. Lyndon Ins. Group, Inc.*, 316 F.3d 758, 762 (8th Cir. 2003) (assessing a document that stated the parties "will enter into a[n] . . . agreement," and finding that these future-oriented terms indicated that the agreement was not final and binding). Finally, the HOA explicitly indicates that the Stockholders

Agreement for High Plains, which was incorporated specifically for the disputed project, would be entered into at a later date. (Morris Aff., Docket No. 187, Ex. 65.) The fact that this critical component of the project was pushed off to future negotiations further suggests that the parties' commitments to the plant were still in flux.

Transocean asks the Court to look past these deficiencies, arguing that the parties effectively entered into a joint venture, and that such relationships typically admit less certainty about participants' commitments. However, regardless of whether this characterization of the parties' relationship would impact the enforceability of the HOA, the Court concludes that it is clear as a matter of law that the parties did not agree to form a joint venture. To create a joint venture under Delaware law, "there must be (1) a community of interest in the performance of a common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits, [and] (5) a duty to share in the losses which may be sustained." *Warren v. Goldinger Bros., Inc.*, 414 A.2d 507, 509 (Del. 1980). While an agreement to enter into such an arrangement does not necessarily require a written contract, *Wah Chang Smelting & Refining Co. of Am., Inc. v. Cleveland Tungsten Inc.*, No. 1324-K, 1996 WL 487941, at *3 (Del. Ch. Aug. 19, 1996), there must of course be some evidence that the parties voluntarily chose to create this legal status. *See In re Coffee Assocs., Inc.*, No. 12950, 1993 WL 512505, at *5 (Del. Ch. Dec. 3, 1993).

Here, the words "joint venture" do not appear in the HOA, and nothing else in the three-pages of contract terms included in that document specifically bound the parties to a particular profit or loss distribution, or to any of the other markers of a joint venture

quoted above. While the parties did note that they had separately cooperated in the formation of High Plains, the formation of a new corporation is a different legal step with different legal consequences than the formation of a joint venture, and such a step is not sufficient on its own to demonstrate that parties intend to do both. *See In re Coffee Assocs., Inc.*, 1993 WL 512505, at \*5. Indeed the notion that the parties did not intend for their cooperative efforts to go a step farther, and legally qualify as a joint venture – and instead intended to be held only to the commitments arising out of the formation of High Plains – is readily apparent in a draft High Plains shareholders deed sent from Transocean to SDSP in November 2006. (*See* Powers Aff., Ex. 220, Ex. 16.) That document includes a section titled "Relationship Between the Shareholders," which specifically (1) disclaims any partnership between the Transocean and SDSP; (2) disclaims any capacity of Transocean or SDSP to bind the other to any obligation of any kind; and (3) concludes by reiterating that "[t]he rights, duties, obligations, and liabilities of [SDSP and Transocean] under this Deed are several and not joint nor joint and several."[2] (*Id.*, at 1411-12.) In other words, these passages sought to make it clear that the parties' overlapping rights and responsibilities were limited to those that arose in the course of the creation of a new, joint corporation, and that they did not intend to invoke wholly different legal categories entailing further rights and responsibilities. In those circumstances, the Court concludes that SDSP and Transocean were not, as a

---

[2] The relevance of these passages to the HOA, and what the parties believed it established, is underscored by the fact that the HOA specifically indicates that the stockholders' agreement would ultimately "govern their relationship in respect of [High Plains] and the design, construction and operation of the Plant." (Morris Aff., Docket No. 187, Ex. 65, § 5.)

matter of law, bound to a joint venture, and that joint venture status does not render the vague and unenforceable commitments contained in the HOA binding. *See generally* 46 Am. Jur. 2d Joint Ventures § 9 (explaining that a joint venture agreement may be too indefinite to be enforceable, and offering as an example an agreement that fails to state when the critical transaction will take place, how costs will be allocated, how profits will be calculated, and what the parties' responsibilities would be in the event of a loss).

In sum, Transocean is seeking to characterize three-pages of general, proposed concepts into an enforceable contract to jointly construct and operate a complex, expensive biodiesel plant. Actual binding agreements to perform such expansive tasks would almost certainly include more precise details necessary for such a project to move forward, and would most likely have removed any ambiguities about whether the parties' commitment were in effect now, or were contingent on future negotiations. In short, the HOA simply amounts to an unenforceable "agreement to agree," rather than a binding contract, and in the Court's view, the issue is not even close.[3] Accordingly, defendants' motions are granted and Transocean's motion for summary judgment is denied as to the

---

[3] Transocean also briefly argues that the HOA should be enforced because the parties had begun performing their obligations, by seeking funding and strategic partners. The Court finds nothing in these ambiguous steps, however, that is sufficient to demonstrate any specific enforceable contract terms. *See Hindes v. Wilmington Poetry Soc'y*, 138 A.2d 501, 504 (Del. Ch. 1958) (rejecting this theory where performance did not render the indeterminate contract terms definite). The Court also notes that it fails to find anything in the various lay descriptions of the parties' relationship that is sufficient to alter the clear import of the documents discussed above. While there are colloquial descriptions of the parties' relationship as a joint venture in SDSP meeting minutes and in a filing with the SEC, (*see, e.g.*, Al Decl., Docket No. 227, Exs. 30, 35), there is no evidence that the parties made the specific agreements necessary to fall under this special legal category of business relationships, as explained above. In addition, various comments from SDSP agents suggesting that it was involved in some type of contractual relationship are consistent with the possibility that it was bound under the provision requiring it to negotiate the stockholders' agreement in good faith, as discussed below.

question of whether defendants breached an enforceable contract to build a biodiesel plant.

**C.    The Agreement to Negotiate the Stockholders Agreement in Good Faith**

While the Court concludes that the HOA is largely unenforceable for the reasons given above, the Court finds that the provision committing the parties to negotiating the stockholders' agreement in good faith merits separate treatment. That term says "[a]s soon as practicable after the date of this HOA, the parties agree to negotiate in good faith the terms and conditions of a formal Stockholders Agreement to more fully document the intentions of the parties as set out in this HOA." (Morris Aff., Docket No. 187, Ex. 65.) Nothing in this provision suggests that the parties' obligations to comply with it are not yet in place, and it is sufficiently precise to be enforceable. *See Gillenardo v. Connor Broad. Del. Co.*, No. 98C-06-015, 2002 WL 991110, at *6-8 (Del. Super. 2002) (enforcing a similar provision). Accordingly, Transocean argues that even if the remainder of the HOA is unenforceable, and SDSP was not contractually committed to actually constructing a biodiesel plant, it should be allowed to pursue a claim for breach of this provision. The Court agrees.

Under Delaware law, an express contractual promise to negotiate in good faith may be enforceable even where the rest of the contract is an unenforceable agreement to agree. *See Gillenardo*, 2002 WL 991110, at *6-8. SDSP's primary argument that this portion of Transocean's breach of contract claim should nonetheless be dismissed is that this dispute should be governed by Minnesota law, under which SDSP contends this

claim would fare less favorably. For the reasons given above, however, disputes arising under the HOA are governed by Delaware law. Accordingly, the Court's dismissal of the remainder of Transocean's contract claim does not require the dismissal of this more limited attempt to enforce the good faith provision. *Id.*

As to whether this duty was breached, the Court concludes that there is sufficient evidence in the record for this claim to go to a jury. In sum, there is at least some evidence that SDSP took steps to finance the project on its own, without informing Transocean of those explorations, despite the fact that (1) this contractual obligation to negotiate with Transocean in good faith was still in place; and (2) Transocean was continuing to expend efforts on the project – and incurring thousands of dollars in expenses – with the understanding that SDSP was still earnestly seeking an agreement. While it is far from clear that this evidence will persuade a jury that SDSP breached its duty, the Court finds that this claim is sufficient to go to trial. Accordingly, SDSP's motion for summary judgment is denied to the extent that it seeks to dismiss this portion of Transocean's breach of contract claim.[4]

---

[4] The Court briefly notes that SDSP also argues that regardless of whether it assumed any binding obligations in the HOA, any failure to continue negotiating was justified by a dilution of its ownership stake that was likely to result from Transocean's evolving financing plans. SDSP also argues that Transocean cannot demonstrate that it suffered any recoverable damages, because of the diminished value of the project. In addition, Transocean argues that the circumstances of the plant's development – and the likelihood that additional steps forward would have been profitable – make it clear as a matter of law that SDSP breached its duties. These heavily fact-laden questions about the reasonableness of the parties' negotiating positions and the true value of the High Plans project, however, are plainly issues that must be resolved by a jury. This Court is simply not in a position, on this record, to determine that either party made appropriate business decisions as a matter of law.

## III.   IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (Count 2, against SDSP)

Transocean also alleges a claim for breach of the implied covenant of good faith and fair dealing.  SDSP's only argument that this claim should be dismissed is that it cannot stand alone without the presence of an enforceable contract.  While SDSP is correct about this general proposition, *see Gloucester Holding Corp. v. U.S. Tape & Sticky Prods*., LLC, 832 A.2d 116, 128 (Del. Ch. 2003) (explaining that this cause of action arises out of contractual relationships), the Court has allowed a portion of Transocean's breach of contract claim to go forward, for the reasons given above.  Thus, the Court concludes that Transocean's claim for a breach of the implied covenant must be allowed to go forward on that limited basis as well.  Accordingly, SDSP's motion for summary judgment is denied to the extent that it seeks to dismiss Transocean's claim for a breach of the implied covenant.  That claim is allowed to go forward only to the extent that it arises out of SDSP's promise to negotiate a shareholders' agreement in good faith.

## IV.   PROMISSORY ESTOPPEL (Count 3, against SDSP)

Transocean also brings a claim for promissory estoppel, contending that even if the HOA is unenforceable in contract, it ought to be enforced in equity.  "Under Delaware law, a plaintiff asserting a claim for promissory estoppel must show by clear and convincing evidence that (i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the

promise."[5] *Territory of the U.S. Virgin Islands v. Goldman, Sachs & Co.*, 937 A.2d 760, 804 (Del. Ch. 2007). "The promise must also be reasonably definite and certain." *Id.*

The Court concludes that the record is insufficient to support this claim, for many of the same reasons that the HOA is largely unenforceable. Transocean alleges that it relied on SDSP's promises to (1) build a biodiesel refinery and (2) honor the terms of the HOA. Transocean, however, had financed biodiesel refineries in the past, and would have known that many more agreements would be necessary before either party could responsibly make a binding commitment to go forward. In short, the Court finds nothing in the record on which Transocean, a sophisticated commercial actor, could have reasonably interpreted as binding assurance that SDSP would go forward with the disputed refinery project.

Transocean argues that *Pharmathene, Inc. v. Siga Technologies, Inc.*, No. 2627-VCP, 2008 WL 151855, at *7 (Del. Ch. Jan. 16, 2008), calls for a different result. In that case, the Delaware Court of Chancery allowed a promissory estoppel claim to go forward based in part on a written "agreement to agree." In that case, however, the written instrument went so far as to articulate a specific and nuanced royalty schedule, listing specific dollar amounts and percentages. *Id.* at *13. Such information would clearly offer much stronger assurance that the parties have made a binding commitment to the

---

[5] The Court applies Delaware law to Transocean's common law claims as well. As the Delaware Court of Chancery explained in *Pharmathene, Inc. v. Siga Technologies, Inc.*, No. 2627-VCP, 2008 WL 151855, at *7 (Del. Ch. Jan. 16, 2008), parties agreeing to choice-of-law provisions could not reasonably intend that various states' laws would apply to a business dispute merely because secondary common law claims may arise out of the same transactions. As to the fiduciary duty claims dealt with below, the Court is also required to apply Delaware law under the internal affairs doctrine. *See Potter v. Pohlad*, 560 N.W.2d 389, 391 (Minn. Ct. App. 1997).

project, and are wholly absent here.  Accordingly, SDSP's motion for summary judgment is granted to the extent that it seeks the dismissal of Transocean's promissory estoppel claim.

## V.	BREACH OF FIDUCIARY DUTIES

### A.	**SDSP** (Count 5)

Transocean also argues that SDSP owed it fiduciary duties as a result of (1) the parties' formation of a joint venture; and (2) its status as a shareholder in High Plains.  As to the first argument, the Court concludes, for the reasons given above, that the parties did not enter into a joint venture as a matter of law.  As to the second, "[u]nder Delaware law a shareholder owes a fiduciary duty only if it owns a majority interest in or exercises control over the business affairs of a corporation."  *Ivanhoe Partners v. Newmont Min. Corp.*, 535 A.2d 1334, 1344 (Del. 1987).  Here, there is very little in the record that suggests that High Plains undertook any meaningful activities, and nothing suggesting that SDSP exerted an influence outstripping its equal, 50% stake.  Accordingly, SDSP's motion to dismiss Transocean's breach of fiduciary duty claim against SDSP is granted.

### B.	**Individual Defendants** (Count 6)

Transocean also brings a claim for breach of fiduciary duties against several individual members of the High Plains board.  The directors of Delaware corporations owe both the corporation and stockholders duties of due care, good faith, and loyalty.  *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998).  "That triparte fiduciary duty does not operate intermittently but is the constant compass by which all director actions for the

corporation and interactions with its shareholders must be guided." *Id.* Here, Transocean argues that Rodney Christianson, Daniel Feige, Rodney Skalbeck, and Thomas Kersting violated this duty by acting in the best interests of SDSP, at the expense of the independent interests of High Plains and the rest of its shareholders. Transocean contends that the four directors manufactured artificial concerns with High Plans' project in order to allow SDSP to leave its cooperative relationship with Transocean and pursue the project on its own. Transocean seeks summary judgment on the narrow question of whether defendants were bound by fiduciary duties to High Plains and its shareholders, and defendants ask that this claim be dismissed.

As an initial matter, the Court agrees with Transocean that defendants were bound by fiduciary duties arising from their positions on the High Plains board as a matter of law. Defendants argue otherwise, contending that these duties did not yet attach because High Plains was not yet a fully-operational company. Defendants contend that because these duties did not yet attach, any activities involving High Plains should be characterized as the continuing discussions of parties in an arm's-length business relationship, as opposed to activities implicated their fiduciary responsibilities. Defendants admit, however, that in August 2006, High Plains sold 3 million shares for $2 million. (*See* Docket No. 197, at 4.) While defendants contend that this money was never actually deposited in a High Plains account, they do not dispute that the money was formally designated for High Plains. The sheer size of this transfer suggests that High Plains had reached a point where the duties of due care and loyalty in the handling of High Plains' affairs were critical. In short, even if there are circumstances where

corporate directors are able to escape fiduciary duties on the basis of the limited activities of a corporation – a proposition that this Court views with great skepticism, *see Fisher v. State Mut. Ins. Co.*, 290 F.3d 1256, 1261 (11th Cir. 2002) (finding that directors of a supposed "shell" corporation nonetheless owed it fiduciary duties under Georgia law, "irrespective of its specific characteristics or history") – those circumstances are not present here. In light of High Plains status as a legal, if not yet fully operational, Delaware corporation, the individual defendants owed High Plains a duty of "uncompromising loyalty," as in any other circumstance in which a shareholder appoints members to a corporate board.[6] *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983). Accordingly, Transocean's motion for partial summary judgment is granted to the extent that it seeks a ruling that the individual defendants owed fiduciary duties to High Plains and its shareholders.

The Court also finds that the question of whether these duties were breached is sufficient to go to the jury. Each of the four individual defendants were formally members of the High Plains board, which was intended to effectuate the parties' shared interest in constructing a biodiesel plant. In spite of the responsibility to High Plains shareholders that flowed from these positions, Transocean points to evidence that

---

[6] The Court adds that although the individual directors' loyalties were likely taxed by their dual roles with High Plains and SDSP, those circumstances offer no relief from their duties to High Plains under Delaware law, particularly in light of the apparently undisputed allegation that the individual defendants did not disclose SDSP's exploration of the possibility of constructing the plant itself. *Id.* ("There is no dilution of this [fiduciary] obligation where one holds dual or multiple directorships . . . ."); *see also Kaplan v. Centex Corp.*, 284 A.2d 119, 123 (Del. Ch. 1971) (concluding that directors on the same board actually remained, as a legal matter, in an arm's-length business relationship, but noting that they had fully disclosed their diverging interests).

defendants participated in SDSP meetings in August and September of 2006 – several months before SDSP formally ended its efforts to work with Transocean – where SDSP decided to pursue the biodiesel project on its own.  While it is not necessarily remarkable that businesses would continually weigh such alternative options – and it is not necessarily clear that a jury will find this evidence persuasive on the question of whether defendants' duties were actually breached – the Court concludes that this is not a question it can resolve as a matter of law.[7]  Accordingly, the individual defendants' motion for summary judgment is denied to the extent that it seeks to dismiss this claim.

## VI.   UNJUST ENRICHMENT (Count 7, against SDSP)

Transocean brings a claim against SDSP for unjust enrichment.  Under Delaware law, unjust enrichment is defined as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."  *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988) (internal quotation marks omitted).  Here, as explained above, the only instance in which SDSP potentially failed to satisfy any binding commitments, or otherwise derived any gains through conduct that merits the intervention of the legal system, is in the context of its alleged breach of its duty to

---

[7] The Court notes that defendants appear to have limited their arguments against Transocean's fiduciary duty claim to legal propositions that apply to each defendant equally, without raising individual challenges against the strength of the evidence against particular defendants.  In other words, any differences in the actions of the four individual defendants were not put squarely at issue.  The Court emphasizes that at trial, however, Transocean will of course be required to bring evidence tying each individual defendant to specific breaching acts, and will be unable to simply treat the four individual defendants as a single entity.

negotiate a High Plains shareholder agreement in good faith.  Accordingly, that it is the only allegedly wrongful act that this Court considers as a basis for any unjust enrichment claim.

In reviewing the record, the Court is skeptical as Transocean's ability to tie this allegedly wrongful conduct to specific, unjust enrichment to SDSP.  Indeed, SDSP has submitted an affidavit – which Transocean does not appear to have disputed – indicating that SDSP incurred approximately $185,000 in losses on the failed project.  (Christianson Aff., Docket No. 188, ¶ 16.)  In addition, there is no evidence that SDSP has actually usurped the project by constructing the planned biodiesel plant on its own.  Nonetheless, the Court concludes that it cannot determine as a matter of law that if SDSP unjustifiably failed to negotiate the stockholders agreement in good faith, it did not receive any inappropriate benefit from that conduct.  Transocean points, in particular, to economic evaluation models that it provided to SDSP in the course of negotiations, which may well embody the kind of expertise that Transocean is typically compensated for.  While the Court will monitor this claim carefully at trial – to ensure that any enrichment is indeed connected to a wrongful failure to negotiate in good faith, and also to ensure that the jury is properly encouraged to consider the (potentially limited) value of what, specifically, SDSP received from Transocean (as opposed to Transocean's losses or the potential full value of a completed biodiesel plant) – this claim is sufficient to proceed to trial.  Accordingly, SDSP's motion for summary judgment is denied to the extent that it seeks the dismissal of Transocean's claim for unjust enrichment.

**VII. CONSTRUCTIVE FRAUD** (Counts 8 & 9, against SDSP and Individual Defendants)

Under Delaware Law, a claim for "constructive fraud" is treated as another way to allege a claim for breach of fiduciary duty. *See Parfi Holding AB v. Mirror Image Internet, Inc.*, 794 A.2d 1211, 1236-37 (Del. Ch. 2001), *rev'd on other grounds*, 817 A.2d 149 (Del. 2002). Accordingly, defendants' motion to dismiss this claim is granted.

**VIII. CIVIL CONSPIRACY** (Count 10, Against SDSP and Individual Defendants)

Transocean also brings a claim for civil conspiracy against all of the defendants. "Under Delaware law, to state a claim for civil conspiracy, a plaintiff must plead facts supporting (1) the existence of a confederation or combination of two or more persons; (2) that an unlawful act was done in furtherance of the conspiracy; and (3) that the conspirators caused actual damage to the plaintiff." *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1036 (Del. Ch. 2006). Ordinarily, "[b]ecause a corporation and its agents are a single person in the eyes of the law, a corporation cannot conspire with itself." *Barstad v. Murray County*, 420 F.3d 880, 887 (8th Cir. 2005). The individual defendants serving on High Plains' board were also employees, shareholders, or directors of SDSP.

The Court agrees that this claim must be dismissed. As defendants explain, Transocean's theory is that the individual defendants were conspiring with SDSP, the company that appointed them to the High Plains board, and the company they all had served in some representative capacity either as directors or officers. Though Transocean is correct that the individual defendants all held duties to High Plains, that does not

change the fact that if those parties were taking actions on behalf of SDSP, as Transocean suggests, the conspiracy alleged by Transocean would still amount to a conspiracy between SDSP and individuals formally serving SDSP in some representative capacity. The Court concludes that such a conspiracy falls within the spirit of the intra-corporate immunity doctrine, and that the alleged improprieties forming the core of this claim are appropriately addressed in the context of the breach of contract claim and fiduciary duty claim discussed above. Accordingly, defendants' motions for summary judgment are granted to the extent that they seek dismissal of Transocean's claim for civil conspiracy.

## IX.   EXCLUSION OF EXPERTS AND VALUATION EVIDENCE

Transocean also brings three motions in limine. Those motions seek to exclude the testimony of two of SDSP's experts and evidence concerning the value of any prospective bio-diesel plant following SDSP's alleged breach. The purpose of this third motion is to keep the jury from judging the profitability of the proposed plant on the basis of later events. The Court concludes that the appropriate course is to deny these motions without prejudice, and consider these issues before the start of trial. This will allow the parties to focus their discussion of these issues on the claims that remain in this case following the rulings explained above.

This case will be placed on the Court's next available trial calendar.

# ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Defendant SDSP's Motion for Summary Judgment [Docket No. 183] is **GRANTED in part** and **DENIED in part.**

    a.    The motion is **DENIED** to the extent that it seeks the dismissal of (1) Transocean's claim that SDSP breached its duty to negotiate a shareholders' agreement in good faith; (2) Transocean's claim for a breach of the implied covenant of good faith and fair dealing (to the extent that this claim arises out of SDSP's alleged failure to negotiate a shareholders' agreement in good faith); (3) Transocean's claim for unjust enrichment (to the extent that this claim arises out of SDSP's alleged failure to negotiate a shareholders' agreement in good faith); and (4) Transocean's pursuit of damages.

    b.    In all other respects, the motion is **GRANTED**.

2.    Defendants Christianson, Feige, Kersting, and Skalbeck's Motion for Summary Judgment [Docket No. 192] is **GRANTED in part** and **DENIED in part** as follows:

    a.    The motion is **DENIED** as to Transocean's claim that the individual defendants breached their fiduciary duties to High Plains and its shareholders.

    b.    In all other respects, the motion is **GRANTED**.

3. Plaintiffs Transoceans' Motion to Exclude Douglas G. Tiffany's Proposed Expert Testimony and Strike Douglas G. Tiffany's Deposition Correction Sheet and Second Report [Docket No. 193], its Motion to Exclude Expert Testimony of Edward S. Adams [Docket No. 198], and its Motion to Exclude Post-Breach Valuation Evidence [Docket No. 203] are all **DENIED without prejudice**.

4. Plaintiffs Transoceans' Motion for Partial Summary Judgment [Docket No. 209] is **GRANTED in part** and **DENIED in part** as follows:

a. The motion is **GRANTED** as to plaintiffs' request for a declaration that the individual defendants owed plaintiffs fiduciary duties.

b. In all other respects, the motion is **DENIED**.

DATED:  September 30, 2009
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge